[No. 13575. Department One. August 29, 1917.]

LAURA B. PRINZ, *as Prinz Electrical Company, Respondent,*
v. SECOND STREET THEATRE COMPANY, *Appellant.*[1]

MECHANICS' LIENS—CONTRACT FOR EXTRAS—FURNISHED TO LESSEE
—EVIDENCE—SUFFICIENCY. Where a subcontractor for electric wir-
ing in a theater building was paid in full for the work contracted
for by the principal contractor, he is not entitled to a mechanics'
lien for extras ordered by and furnished to a lessee with whom he
contracted to do special stage wiring, and it is immaterial that the
plans for such special wiring and extras were prepared by the archi-
tect of the building, who was in that matter acting as agent of the
lessee; since neither the owner nor his agent contracted therefor.

SAME. In such a case, the fact that an officer of the owner or-
dered some of the extras is not controlling, where it appears that
he was known to be an officer of the lessee also, and his testimony
that he gave the orders for the lessee is uncontradicted.

Appeal from a judgment of the superior court for Walla
Walla county, Mackintosh, J., entered December 4, 1915,
upon findings in favor of the plaintiff, in an action to fore-
close a mechanics' lien, tried to the court. Reversed.

*Timothy A. Paul,* for appellant.

*Earl W. Benson* and *John C. Hurspool,* for respondent.

WEBSTER, J.—This is an action to foreclose a mechanic's
and materialmen's lien. Plaintiff alleges that, between May
14, 1915, and July 29, 1915, at the special instance and re-
quest of the defendant, she furnished labor and material in
the construction of the building known as the Liberty The-
atre, in the city of Walla Walla, of the reasonable value of
$452.31, for which the defendant refused to pay, and that
her notice of lien for such labor and material had been duly
filed with the county auditor of Walla Walla county. She
prayed that the lien be foreclosed and the property against
which it was sought to be enforced be sold to satisfy the

[1]Reported in 167 Pac. 39.

amount of her claim. Defendant, by its answer, denied the material allegations of the complaint, and affirmatively alleged that its contract with the general contractor, N. J. McLeod, provided that payment for all of the labor and materials necessary in the construction of the building, viz., $19,500, should be made to McLeod by the defendant upon the completion of the work; that such sum had been paid to McLeod; that McLeod had sublet the contract for the wiring of the building to plaintiff; that he had paid plaintiff $565, which was the entire amount due on the subcontract for wiring, and that he had obtained from plaintiff a receipt in full therefor. Plaintiff, by reply, admits the receipt of $565 from McLeod, but alleges that the work for which that amount had been paid was included in the original plans and specifications, and had no relation to the extra work furnished by plaintiff upon defendant's building and which constituted the basis of her action. Upon the issues thus joined, the cause was tried to the court sitting without a jury, resulting in a judgment in favor of plaintiff in the sum of $266.27, with costs and attorney's fees, and a foreclosure of plaintiff's lien against the premises in question for the amount of the judgment and costs. From this disposition of the case, defendant appeals.

The single question for determination is one of fact, viz.: With whom was the contract in question made. It will not be necessary to set out the testimony in great detail, but only the more salient features which we deem to be controlling here shall be reviewed. An examination of the evidence adduced during the trial shows that, at the time the building known as the Liberty Theatre was in the course of construction, the defendant leased the premises for a period of ten years to the Crews Amusement Company, a corporation engaged in the business of operating moving picture theaters in the city of Walla Walla, and of which one C. S. Crews was manager. During the time the theater was being built and after it had been leased to the Crews Amusement Com-

pany, C. S. Crews, as manager, required certain extra work to be done, including stage wiring and wiring in the operating room of the theater. He employed George B. Purvis, the architect of the building, to secure a bid from plaintiff for this extra work. Plaintiff placed her bid at $425, and designated the contract entered into pursuant to it as "stage wiring contract." The work was paid for by the Crews Amusement Company and is evidenced by two checks, one for $300 and one for $125, given to plaintiff by C. S. Crews on June 19, 1915, and July 21, 1915, respectively. The checks were payable to Otto L. Prinz, as manager of the Prinz Electrical Company. The payments are further evidenced by receipts for $300 and $125 to the Crews Amusement Company, signed "Prinz Electrical Company, O. W. Prinz, Mgr." The extra work done by plaintiff, which is the basis of her claim of lien, consisted of labor and materials furnished over and above that provided for either in the subcontract for wiring entered into with McLeod, the general contractor, or in the special stage wiring contract entered into with the Crews Amusement Company. As we read the record, it was work ordered either by C. S. Crews, as manager of the lessee corporation, or by Oscar Drumheller, an officer in both the defendant corporation and in the Crews Amusement Company, or by George B. Purvis. That the plaintiff had no contract for extra wiring with the defendant through the general contractor, N. J. McLeod, is manifest from the testimony of McLeod, which stands uncontradicted. That the extra work in question was understood to be distinct from, and to bear no relation to, the general subcontract for wiring is further evidenced by the testimony of C. S. Crews, wherein he narrates in detail the nature of the transaction with reference to the special wiring of the stage and operating room and the additional work done by plaintiff. He testified in part as follows:

"Q. Was there any discussion with Mr. Seibert [plaintiff's foreman] at the time as to who that work was done for?

A. Yes, sir. I told him it was for me—the Crews Amusement Company. Q. How did you happen to tell him that? A. He was doing work on the building and I wanted him to get in there and get the organ installed. I said this had nothing to do with the building. I wanted it in there."

In response to other questions as to who had ordered certain items of extra work enumerated in the bill of particulars, Crews answered that they had been ordered by him or by Drumheller or by Purvis for the use and benefit of the Crews Amusement Company. It seems clear, therefore, that the agreement for the extra wiring and the other work for which claim is made here was entered into between plaintiff and the Crews Amusement Company.

It is contended by counsel for plaintiff that Purvis, acting in his capacity as architect for the defendant, ordered the extra wiring done by plaintiff. But the evidence shows that, with respect to this transaction, he was acting as agent for the Crews Amusement Company. Plaintiff's acceptance of $425 from Crews for this special work and the receipts therefor, signed by her manager, whose authority is not questioned, indicate that she was thoroughly cognizant of the nature of the agreement for items in addition to the wiring of the stage and operating room, and knew that her contract was with the Crews Amusement Company. The checks for $300 and $125, which she received from the Crews Amusement Company for stage wiring and wiring in the operating room, were signed by C. S. Crews and countersigned by Oscar Drumheller. This, coupled with other facts revealed by the record, leads us to believe, and the evidence clearly preponderates in favor of the conclusion, that plaintiff's contract for the work and materials which constitute the basis of this action was with the Crews Amusement Company rather than with the defendant. Her manager gave to the Crews Amusement Company, through Purvis, an estimate on certain extra work. Payment for this work was

made to her by the Crews Amusement Company, and she executed to that company receipts therefor.

In the light of these facts, the conclusion is irresistible that plaintiff must look to the Crews Amusement Company for whatever compensation may be due her for the extra work in question, which, as we view the record, was incidental and in addition to the contract for wiring which existed between plaintiff and the Crews Amusement Company. C. S. Crews admits liability on the part of the Crews Amusement Company for such amount as may be justly due plaintiff for extra work and material over and above that stipulated in the $425 contract, and it is also shown that this company is solvent and amply able to meet its obligations. In our opinion, it is clear that plaintiff and defendant in this action never entered into an agreement for work of any kind, other than that which was sublet to plaintiff by the general contractor.

Counsel for plaintiff lay stress upon the fact that some of the items contained in the bill of particulars were ordered by Oscar Drumheller, who was an officer in the Second Street Theatre Company, but it must be borne in mind that Drumheller was also an officer in the Crews Amusement Company, that he countersigned the two checks given to plaintiff by the Crews Amusement Company in payment of the stage wiring contract, and that plaintiff, of necessity, must have known that Drumheller was acting for the Crews Amusement Company and not for the defendant. In reply to the question: "You gave orders for certain of this work?" Drumheller answered: "Not for the Second Street Theatre Company, and no orders until after the building had been occupied; with the exception that, in conjunction with Mr. Crews, I asked Mr. Seibert to see that the sign was connected." This testimony stands uncontroverted and seems determinative of the capacity in which Drumheller was acting in the transactions set out in the bill of particulars. If the labor and materials alleged to have been furnished by plaintiff had

been necessary to a performance of her contract for wiring the building and had been ordered by the general contractor or by the architect as such, we should feel constrained to affirm the ruling of the lower court. But where, as in this case, a lessee enters into an agreement for work to be performed upon the premises which he occupies as tenant, and the facts indicate, as here, that the nature of the agreement and the parties to it are clearly understood by both of the parties to the contract, the owner of the premises, who is in no way a party to the agreement, should not be deprived of his property by a foreclosure sale held to satisfy an indebtedness which was never incurred by him.

The judgment of the lower court is reversed, with direction to dismiss the action.

MORRIS, HOLCOMB, PARKER, and FULLERTON, JJ., concur.